The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Our first case for argument today is 20-1897 Nite Glow Industries v. Central Garden & Pet Company. Ms. Bostwick, please proceed. Thank you, Chief Judge Moore. May it please the Court. Central is facing a judgment of over $12 million based on a product, the SmartShield applicator, that lost Central money on its previously profitable flea and tick medications. Now, at the very most, the evidence presented to the jury showed that HLB, the third party that designed the SmartShield, might have had the opportunity to have access to an idea for a particular kind of applicator six weeks before plaintiffs published that idea to the world, which was still months before... Ms. Bostwick, let's look at... Doctor, this is a jury verdict. The jury presumably found a breach. It had evidence that there were $60 million of sales, that there were $30 million of profit, and $11 million in damages. So, aside from labels, why wasn't justice done in awarding $11 million, and why shouldn't we just affirm on that aspect of the case, on the damages? Because the judgment rests on two legal errors, Your Honor. And the first is New Jersey's economic loss doctrine, which means that the misappropriation claim, and therefore the opportunity to award a disgorgement remedy, should not have been presented to the jury at all. And the critical question for that is whether the plaintiff's claim depends on a duty that is extraneous to the contract. And here, the submission of idea tort never even exists if there's a contract. It is a rarely used... But if we affirm $11 million, as I say, aside from labels, then we're not violating the New Jersey economic loss doctrine. We're not awarding damages on the same facts on two grounds. You would be, Your Honor, because the jury did not award $11 million on the contract claim. It awarded $800,000 on the contract claim. And that is because it was properly instructed under contract law to provide compensatory damages, not disgorgement. Disgorgement was only a remedy under the tort claim, which should never have gone to the jury. So, this isn't simply a matter of labels. It's not simply a matter of election of remedies. It is a significant problem and a legal problem with the verdict. Ms. Possack, this is Judge Moore. If we don't agree with you on this principle, this economic loss rule principle of yours, and if we think it was appropriate for the misappropriation common law tort to have gone to the jury, do you have alternative arguments about the $11 million damage award? Yes. We have several. One, like the contract claim, we don't believe there is substantial evidence of use of the idea that took place before April 8, 2010, which is when Ms. Markell's idea became public by virtue of the publication of her patent application. And so, we believe that both verdicts should be reversed on background as well because New Jersey tort law requires novelty as an element of the claim and because the contract said that Central was under no obligation once the idea became public by virtue of someone else's actions. Here are the plaintiffs. We also have explained in our briefing why the damages award was excessive on several different grounds, but I would like to emphasize that this tort, again, cannot exist if there is a contract. It is not a preexisting duty in the law. It is something that a court implies on principles of unjust enrichment if the plaintiff doesn't have a contract. Here, the plaintiff has a contract. The plaintiff has a contract that governs not only confidentiality and nondisclosure but repeatedly imposes obligations on Central not to use the idea, not to make a product including it, not to have a third party develop a product including it. And so, Ms. Markell chose, right, this is a contract she brought to Orpahs. She chose to protect herself through contract. She testified that the purpose of this was so that a company doesn't, quote, steal her idea and she has to proceed under contract law. There's no basis for a court to come in after the fact and nonetheless imply this tort. Ms. Moskowitz, isn't your argument about this seemingly inconsistent with the restatement? Doesn't the restatement suggest that in circumstances like this, you can have both a claim for misappropriation under tort law and a breach of contract law? The restatement says as a matter, a general statement of law, that the existence of a contract protecting trade secrets doesn't preclude a separate cause of action in tort. But the restatement doesn't account for New Jersey's law, which says that you have to look at the contract duties to see if there ever is a tort that comes into being. And what courts have held, regardless of the restatement, is that these misappropriation of trade secret claims cannot go forward based on the economic loss doctrine. They held that in Trico, held that in Helmetica, held a similar claim barred in Novartis, and the plaintiffs do not address those cases. Just to be clear, the cases that you're citing are all district court cases in New Jersey attempting to interpret New Jersey state law. Is that correct? These are not New Jersey state courts. Those three that I just mentioned, Your Honor, are from the District of New Jersey. But if we look at what the Supreme Court of New Jersey has said, going back to 1951 in the Moser case, they've said that you cannot have a contract implied in law, there it was quantum merit, which is a very similar theory to the unjust enrichment theory at issue here. You cannot have an implied contract on the same subject matter as an express contract. More recently, they've held in the Salt Hill case the exact same thing. And the reason why is that New Jersey has this policy. It says the Third Circuit put it in the Travelers case, New Jersey's strong resistance to the user-patient of contract law by tort law. In the state capital case, they talked about New Jersey's preference for contract law to govern disputes that were or could have been foreseen. Here we know the parties foresaw exactly the problem that Ms. Markell now claims has happened, which is Central using her idea for its own purposes and without working with her on it. We have a contract on the exact subject at issue. Okay, counsel, in the event that we were to disagree with you and believe that the restatement controlled and that we didn't agree with you that there couldn't be these two causes of actions, can you please move to your other arguments about the damage award? Certainly. Can I start with the – I'm sorry, Your Honor. I was just going to say, and particularly the head start issue. Certainly. So, you know, at most here, the benefit that Central got was a six-week head start from the rest of the world. What plaintiffs allege was misappropriated here is they allege that Mr. Blomquist, who had access to the idea, disclosed it at the February 2010 meeting. All the evidence is that he didn't, but that's their allegation. And so if that's true, that's six weeks before April 8, 2010, and that's when the entirety of her idea was disclosed to the public in her patent application. Now, at that point, she has rights under the patent law. Of course, we don't infringe as the district court found. But as to the state law claims, then, her damages are limited to that six-week head start or should have been. And that's, you know, if we look at the restatement of unfair competition, it says that. It's section 45, comment. Well, counsel, that's really a legal position, right, that as a matter of law, she should be limited to damages under those circumstances. Is that right? It is, although the District of New Jersey has said that this is a question of the facts of the case. Well, of course it's a question of the facts of the case, but you're saying as a matter of law, misappropriation damages should be limited to the head start period when something goes public. Correct. I mean, that's a question of law. But you didn't ask for any sort of instruction. In fact, the misappropriation damages instructions that were given to the jury were jointly proffered by both parties. And so there was nothing presented to the jury that would suggest that they were expected to view the law that way. So I disagree with that, Your Honor, in two respects. For one thing, we did before this joint instruction, we did ask for an instruction that would have told the jury that the damages here should have been limited to the incremental benefit. And so that accounts for both the apportionment concept as well as the timing concept, but also the instruction that was given to the jury had this causation requirement, right? The jury was required to tie and plaintiffs were required to tie the harm to the misconduct. And here, if the misconduct is limited to those six weeks, that there is no evidence that plaintiffs put forward, there was no evidence in the record that allowed the jury to make that calculation, except for central's evidence, which showed there was no profit whatsoever. Just so I understand, because I'm questioning this from a preservation issue. You said you asked for a jury instruction on incremental benefit. Did you preserve a complaint? Did you renew an objection? I mean, when you ultimately consented to the instruction that was gone, is it your view that you preserved an argument that the jury instructions as proffered to the jury were legally improper? So as I say, I don't think we believe that the jury instructions were legally improper because it did have that causation element. We filed a motion in limine, and I apologize. The language I quoted was from our motion in limine. Our jury instruction said, based upon the use. And then we filed a post-trial motion asking for a new trial on this very ground. You filed a post-trial? You're talking about your 50B motion? Correct. And also a trial motion. Yes. It was a combined Rule 50B motion and Rule 59 motion. And the district court did not find that we waived this. The district court simply refused to enforce Head Start because it said that one of the cases, the Taos case, that this court decided arose under Texas, not New Jersey law. Do you have any New Jersey law on this point? No, because, again, this tort has never gone forward in New Jersey. It's never been successful. There are only three cases even addressing it. But what we do have is the Third Circuit cases that we cited, the Parr and the Midland cases, which suggest that New Jersey would follow this approach, which, again, is laid out in the restatement. And if the court believes that the restatement should govern as to economic loss, despite the New Jersey case law, then I think certainly it should govern here. And also the District of New Jersey case cited by the plaintiffs, the Kilbar case, does say that the Head Start application depends on the facts of the case. And we think the facts here certainly support the application of it when we are talking about $11 million of sales that were made two years after the idea became public. And if we were to potentially agree that that seems like an excessive verdict, that it doesn't seem tethered to the six-week period in a meaningful way, I assume the right result would be vacating and remanding for the court to have a new trial on that issue. Is that right? What is your position on the remedy? So we've asked for just a reversal because we have thought JML on the basis that there is no evidence that Central made any profit based on the applicator. But certainly a new trial would be appropriate as well. Okay. So the only way you would get a reversal is if we believe there was no evidence at all of damages, in your view. Or if you believe that it was plaintiff's burden to put those damages on and that their failure to meet that burden justifies a reversal. Okay. Thank you, counsel. Let's hear from opposing counsel, Mr. Norman. May it please the court. The economic loss doctrine simply does not apply to misappropriation. Central's argument that it does runs contrary to the Third Circuit, the restatement, and common sense. Accepting Central's view of the economic loss doctrine would destroy NDAs in New Jersey. And better use NDAs to protect rights, not to undermine them. In Pharmaceuticals, cited in Nyklow's main brief at page 26, the Third Circuit held that the plaintiff there had demonstrated a reasonable likelihood that it would prevail in its trade secret case because the parties had signed a nondisclosure agreement. That NDA did not preempt the tort. It was supporting evidence. And the restatement of law of unfair competition, which has been relied on by both the Third Circuit and New Jersey appellate courts, it says, and we quote that in our brief at page 25, says the existence of an express or implied-in-fact contract protecting trade secrets does not preclude a separate cause of action in court under the rules of this section. It goes on to say- Mr. Norman, Judge Dike, if you're right about New Jersey following the beef statement, then that's a problem for you on the Head Start issue, isn't it? Because the restatement says explicitly that damages for misappropriation have to be limited to the Head Start period where there's a subsequent disclosure, for example, by the filing of a patent application. Yeah, except we do have some case law on this point. One is the- Stick with me for one moment. If the restatement governs here, you lose on this point, right? I don't think so. Why? Because, well, use ends upon publication number one unless- I'm sorry, novelty is lost upon publication unless the use occurred before. If the use began beforehand, then it's not lost, and that's what the case law says. That's what it says in the Kill Bar case. I'm sorry, I'm not following this. I'm talking about section 45 of the restatement, which specifically says that in a Head Start situation, you only get the Head Start damages. And what my question is, we'll get to your argument about New Jersey law. I'm just asking you now only about the restatement. Under the restatement rule, we would have to vacate and remand the damages here, right? I don't really know what the restatement says on that. What I do know, though, is this is not an issue that the federal raised at trial. It constitutes a waiver. And also, there was evidence at trial that there were $12 million in profits in the first six months. So causation was in the jury instruction. But you never presented any evidence of a Head Start period. You never mentioned that at all in the case you presented to the jury on damages, right? Well, Head Start is a defense. So that would have been incumbent upon federal to raise. What I'm saying is- Wait, wait, wait. Who says it's a defense? In our Taos case, we treated it as part of the plaintiff's burden. What says that this is a defense? The restatement certainly doesn't say that. In the Taos case, what was still being applied was Texas law. And the New Jersey Supreme Court has certainly chimed in on this particular issue. So if we're going to be looking at law, we should be looking to law in New Jersey. And I would direct the court to the Adolph Gacho v. American Barking Court case. That's the 1995 one. There's two of those, two Adolph Gacho cases cited in our briefs. Okay. But all those cases seem to hold is that subsequent publication doesn't eliminate the cause of action, which seems to be correct. But they're not addressing the question of whether damages are limited to the Head Start period. There's no discussion of that at all. But they do, because you've got the Kill Bar case, which did say that the damages would continue. The Kill Bar case was a district court case, but that case was affirmed by the Third Circuit. And so the Kill Bar case, looking at this issue, indicated that with respect to that party, the damages would continue if the use occurred before publication. And that seems to be the case with the Gacho case as well, because even injunctive release was available after publication of a patent. So even though the secret was in a patent that's published, injunction was still available. Counsel, what about your cross-appeal argument on assignment of patents? Do you want to address that? Yes. So with respect to the breach of contract action, the jury was specifically instructed as to a duty to disclose and assign patent rights. The jury found that Central violated that by failing to disclose and assign their patents. So because of that, and there was ample evidence, clear evidence, that the jury was right on that point. In fact, the judge affirmed the jury's finding. So the judge then said, there's not ample evidence to tie the patents in. It's inconsistent with what the jury found. So the judge should have considered the issue of whether the patents should have been assigned. The jury didn't consider the assignment question, right? That's the only issue that the jury was instructed on with respect to the breach of contract. The jury instruction was, if you... If you... Let's see, where does the jury instruction go? The jury instruction is Central breached the confidentiality agreement by failing to disclose and assign. And that jury instruction is on appendix page 72. And that's what the jury... And to them, the jury was... The jury awarded damages for the use of those patents to the date of the trial. Yeah, but the jury wasn't asked to determine whether the patents should be assigned, right? No, no, no. That's certainly a question for the court. That's going to be a question for the trial court. But what I'm saying is, what they decided was there was ample evidence tying. So the jury found that there was a duty to assign, but it's still going to be up to the trial court to decide, in her discretion, whether to assign. What we're saying is, she didn't even exercise that discretion because she, as a matter of... As a fact, concluded that there wasn't ample evidence. But there was ample evidence, as found by the jury. There was substantial evidence. Do we review the judge's determination in that respect, under the clearly erroneous standard? Yeah. Well, I think, in a sense, it should be the substantial evidence because it's a finding of the jury. Now, if the judge... So the judge didn't actually exercise her discretion, well, there's no way of indicating that she's doing it based on her discretion as to whether assignment of patents would be the proper thing to do here. She didn't get to even that particular level. I would like to switch over to the patent side. So, when the trial court's claim construction changed, the claims of the 445 patent cover nothing. After all, there's no such thing as a non-flaccid rubber. So, following the Markman hearing, the trial court defined rubber as elastic polymer capable of being flexed, natural, and or synthetically made. Based on that construction, the jury found infringement and willfulness. After trial, the trial court incorrectly ruled Ms. Markell disavowed plastic from the scope of the claim term rubber. Well, a claim covered plastic, and it was canceled, and the remaining claim covered rubber. So, why isn't it clear that plastic was disavowed? We're not talking about a plastic property of something such as rubber, but we're talking about a plastic, and plastic was disavowed. Well, plastic wasn't disavowed because, one, there is no such thing as a non-plastic rubber, because rubber is a polymer. That's what both of the experts said, and that polymers and plastics are synonymous, and it's even in their experts' textbook. So, logically, that means that rubbers are plastics. And we also have Claim 16, which explicitly requires that there be a, that it be a lightweight polymer. So, that's a lightweight plastic. So, but anyway, I want to make one more point on this head start. So, the, however you look at it, the evidence in the case was that within the first six months, within the first six months, Central profited by over $12 million on this product. So, if we're talking about a head start, we're not talking six weeks anyway. We're talking much longer than six weeks. So, there was a head start. Why would that be true? Well, because the disclosure and the, if you look at all the use that began, and that's going to be laid out a bit in the trial court's opinion at A21 to 23. So, the disclosure was in their possession before, I mean, by mid-2009. And then, there were communications that they had with Ms. Markell. But, so they had communications with Ms. Markell, and they began this Project SPEED in 2009. And they had their first Project SPEED meeting in November 2009, and the person to whom Ms. Markell disclosed her invention, that is the person who headed up Project SPEED, and that was six months before trial. I mean, six months before, and then, and the key thing is, they waived this issue. They could have had this in a jury instruction, and they chose not to. And, in any event, the evidence there was that there were $12 million of damages, and $12 million in profits in this first six months. So, I'll reserve the rest of my time for rebuttal. Thank you. Okay. Thank you, counsel. Let's have Ms. Boswick, and she has some rebuttal time. Please proceed. Thank you, Chief Judge Moore. I want to very briefly touch on the claim construction point before I get back to the head start issue. What counsel is saying is, in fact, a logical fallacy. The argument is, rubbers are polymers, and plastics are polymers, so, therefore, rubbers are plastics. That's simply not true. It's not true in the world, and we know it's not true in the context of the 445 patent, because, as Judge Lurie noted, the applicant distinguished plastics by amending her claims to be limited to rubber. As to the head start, what the restatement says, and this is, again, the restatement of unfair competition, section 45, comment H, that a plaintiff is entitled to damages, quote, only for the period of time that the information would have remained unavailable to the defendant without misappropriation. That's the head start point. That was plaintiff's burden to prove. They've said that New Jersey law is contrary. It's not. In the Adolph Gottschalk case, as Judge Dyke noted, it says that you can have a cause of action for use that happened pre-disclosure, pre-public disclosure. It does not say what you get in terms of damages, and I'd note that in the Gottschalk case, there the defendant's company did not even exist before the misappropriation. So what about Kilbar, counsel? That district court case, which is affirmed by the Third Circuit, I very much get your point on restatement section 45, but, of course, if New Jersey law differed from the restatement, we would be bound by New Jersey law. I recognize Kilbar is a district court case, but do you have any means of distinguishing it? Because it seems to directly contradict section 45 of the restatement. I don't think it does. And there the district court, again, said that the Head Start is available, that the Head Start principle is available. It just depends on the facts. And there what the district court relied on to allow greater damages was the egregious facts of that case, including there the defendant had actually taken the trade secret so it was no longer available to the plaintiff and had refused to return it. And on that basis, the district court imposed greater damages and the Third Circuit summarily affirmed. So there is no sort of specific guidance from the Third Circuit on that principle. Well, what about the fact that the case says, accordingly, this is the conclusion in Kilbar, accordingly, the court determines as a matter of law that Head Start is not available to these defendants on the facts in this case. And so I understand that that's focused on the facts, but saying the way in which this is worded makes it sound like a defense, not part of what the plaintiff's burden of proof would be. So I think if Your Honor reviews the whole of the opinion, that's not what the court is saying. What the court says back at page 426, it says first, you know, the cases in this area all turn very narrowly on particular facts and circumstances. Each case doesn't tell unique circumstances. And then later on in that page it says, in fashioning an adequate monetary remedies, the court must consider that defendants did not merely wrongly obtain and use plaintiff's know-how as a competitor. They refused to return the know-how and thereby completely precluding Remington. And that's the point I was referring to earlier. I don't think it is plausible to read Kilbar in the whole as a complete bar on the Head Start doctrine in this area. Well, counsel, I'm not suggesting it's a bar on the Head Start doctrine, but I'm wondering who has the burden of coming forward with evidence related to Head Start. And I think there we would again return to the principle that it's the claimant's burden in all of these cases to show, you know, at least a reasonable approximation of the amount of wrongful gain. If there's lingering uncertainty, then it becomes the defense's burden. But what plaintiffs had to do was actually present evidence tying the damages to the alleged harm. Okay. Any further questions? No. Okay. Thank you, Ms. Boswick. Mr. Norman, you have rebuttal time. I just want to remind you your rebuttal is limited to the only issue she addressed in your cross appeal, which is claim construction. Okay. And on that particular issue, she's incorrect when she says that not all, I don't know, I think she indicated that not all rubbers are plastic. And that's just not the case. The undisputed evidence at trial, Central's expert testified that rubber is a polymer and that polymers and plastics are synonymous. So that means all rubbers are plastics. Not all plastics are rubber. Rubber is an elastic plastic. That's the distinction. So the claims weren't narrowed to eliminate plastic. They were narrowed by the use of the word rubber to make for elastic plastics, elastic polymers. And no disavowal occurred. There were no statements made by the applicant whatsoever. No disavowal occurred? The amendment had no significance? I'm not saying the amendment, it wasn't a disavowal is what I'm saying. The amendment, it was certainly a narrowing amendment. But the term rubber is still to be given its ordinary meaning. It's not a disavowal. It's just it still is to be given its ordinary meaning. There was no lack of confidence. There was no disavowal. So, I mean, with all that, we request that the court affirm the judgment of misappropriation of breach of contract and reverse the trial court's grant of JMOL on the patent claim and grant the other relief requested in our briefs. Thank you. I thank both counsel for their arguments. This case is taken under submission. Thank you.